UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:08 CR 3 |
| | ) | |
| DEWAYNE WHITE | ) | |

## OPINION and ORDER

Defendant Dewayne White pled guilty on April 17, 2008, pursuant to a plea agreement with the government. (DE # 31.) He has yet to be sentenced. After changing counsel (DE # 36), he filed a motion to withdraw his guilty plea (DE # 49), to which the government has responded (DE # 59). White has opted not to reply to the government's response. For the reasons explained below, the court will deny White's motion to withdraw his guilty plea.

## I. BACKGROUND

On January 2, 2008, a grand jury returned an indictment charging White with one count of knowingly and intentionally distributing fifty or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (DE # 11.)

On April 15, 2008, White reached a plea agreement with the government. (DE # 29.) Like most plea agreements, this document outlined the various rights that White would be waiving by pleading guilty. (*Id.* at 2-3.) The agreement also noted that White's actual sentence would be determined by this court after an investigation by the United States Probation Office, and consideration of the U.S. Sentencing Guidelines. (*Id.* at 3.)

Addressing the "bargain" between White and the government, the plea agreement explained that White would agree to plead guilty to the count charged in the indictment, and would waive his right to request documents relating to his case from the government, and his right to appeal his conviction or sentence. (*Id.* at 3, 5.) White also acknowledged that he was "in fact, guilty of the offense." (*Id.* at 3.) As far as the government's promises, the agreement laid out the following provisions:

> C. The United States of America and I have also entered into the following agreements which are not binding upon the Court, and I understand that if the Court does not follow these agreements I will not be allowed to withdraw my guilty plea;
>
> a. In recognition of my acceptance of responsibility for my offense conduct, I am entitled to a two point and, if eligible, an additional one point reduction in offense level for acceptance of responsibility; however, the government is not obligated to recommend I receive the acceptance of responsibility adjustment if I deny my involvement in the offense, give conflicting statements of my involvement, or engage in additional criminal conduct including any personal use of controlled substances;
>
> b. The United States of America and I agree that I am responsible for between 50 and 150 net grams of crack;
>
> c. The United States of America and I agree that if my criminal history qualifies me for safety valve treatment, and if I satisfy the provision of the safety valve statute pertaining to providing information to the government, then the government will recommend that I am eligible for a two-level reduction under the U.S. Sentencing Guidelines pursuant to sections 2D1.1(b)(9) and 5C1.2(a) and 18 U.S.C. section 3553(f);
>
> d. The United States of America and I agree that I was a minor participant in the charged criminal activity and that I am eligible for a two-level reduction under the U.S. Sentencing Guidelines pursuant to section 3B1.2(b);

e. The United States of America recommends that the Court should impose a sentence upon me equal to the minimum of the applicable guideline range.

(DE # 29 at 3-4.)

Although the agreement stated that White was subject to a mandatory minimum term of 10 years' imprisonment (DE # 29 at 3), if White had been eligible for a "safety valve" reduction, this mandatory minimum term could have been avoided (*see* DE # 60 at 12-13), and, with the additional "minor participant" and "acceptance of responsibility" reductions, White could have received a sentence as low as 46 months. (DE # 50 at 2.) White pled guilty pursuant to this plea agreement at a hearing on April 17, 2008 (DE # 31), with all parties apparently believing that he would be eligible for such a sentence.

Unfortunately, White's criminal history thwarted that outcome. The bubble burst when the U.S. Probation Office released its presentence report to the parties on August 26, 2008. (*See* DE # 50 at 3.) This report indicates that White has twice been convicted of misdemeanors for marijuana possession, giving him 2 criminal history points. (*See id.*) As White and the government had foreseen as a possibility, these criminal history points make him ineligible for safety valve treatment. (*See* DE # 29 at 4 ("if my criminal history qualifies me for safety valve treatment . . . the government will recommend that I am eligible for a two-level reduction")). Further, White's ineligibility to receive safety valve treatment also left him unable to receive any practical benefit from the two additional reductions the government had agreed to support— the "acceptance of

3

responsibility" and "minor participant" reductions. The presentence report took those reductions into account when calculating White's offense level, but without the safety valve reduction circumventing the 10 year mandatory minimum sentence, they had no actual effect.

On November 18, 2008, White, represented by different counsel, moved to withdraw his plea agreement. (DE # 50.) The motion argues that the parties made a mutual mistake that White's criminal history score would qualify him for safety valve treatment. (*Id.* at 3, 4-6.) White also contends that no one explained to him that "a criminal history that disqualifies [him] for safety valve treatment also disqualifies [him] from receiving any guideline reduction benefit for acceptance of responsibility or his role as a minor participant." (*Id.* at 4.) Because White was unaware of this fact, he asserts that he did not enter his plea knowingly and intelligently. (*Id.* at 5-6.)

The government responds that White has "incorrectly estimated his sentence," and that this is not a legitimate reason for him to be able to withdraw his guilty plea. (DE # 59 3-4.) It also contends that it was "obvious" that all the reductions depended on White being eligible for safety valve treatment, since this treatment was required to make White "able to receive a sentence below the statutory minimum." (*Id.* at 4.) In addition, the government notes that White's answers at the plea hearing demonstrate that he pleaded guilty knowingly and intelligently. (*Id.* at 5-9.)

## II. STANDARD OF REVIEW

FEDERAL RULE OF CRIMINAL PROCEDURE 11(d)(2(B) allows a defendant to withdraw a guilty plea before the district court imposes a sentence if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). However, after a thorough RULE 11 colloquy has occurred, as in this case (*see* DE # 60), a defendant "faces an 'uphill battle'" in withdrawing his plea. *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004) (quoting *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003)); *see also United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (after going through a proper RULE 11 colloquy "the defendant bears a heavy burden of persuasion in showing that such a fair and just reason exists").

The predominant "fair and just reason" for withdrawing a guilty plea is that the plea was not made voluntarily and intelligently. *See Brady v. United States*, 397 U.S. 742, 747 n. 4 (1970) ("a plea of guilty must be intelligent and voluntary to be valid"). A motion to withdraw a guilty plea rests in the district court's discretion. *See United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008).

## III. ANALYSIS

In this case, White primarily argues that the plea agreement was subject to a "mutual mistake," which resulted in his plea not being "voluntarily and intelligently made." (DE # 50 at 3-6.) He also suggests, as an alternative argument, that he did not understand the consequences of his plea, and thus made it "unknowingly and unintelligently." (*Id.* at 6.)

5

*A. Mutual Mistake*

White's primary argument is that his former counsel and the government were laboring under the "mutual mistake" that his criminal history score was lower than it turned out to be. Plea agreements are governed by ordinary contract principles, *see United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992), and "thus theories of mutual mistake may be a basis for invalidating a plea agreement," *United States v. Loutos*, 284 F. Supp. 2d 942, 959 (N.D. Ill. 2003) (citing *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996)). To provide such a basis, a mutual mistake must affect the "essential parameters" of a guilty plea, such as "the nature of the charge . . . the factual basis for the plea and the limits of the district court's sentencing authority." *Barnes*, 83 F.3d at 938. "The precise nature of the punishment that will be imposed after a plea is effected is not always an essential term of the plea agreement," although it can be, if a "guilty plea is exchanged for the imposition of a specific sentence." *Id.*

The mutual mistake here led both parties to the false believe that White would be eligible for safety valve treatment, and thus able to receive a sentence below the statutory minimum. However, in this court's view, this incorrect estimation does not affect the "essential parameters" of White's plea. The essential parameters here were the nature of the charge, the factual basis for the plea, and the consideration put forth by each side. *See Barnes*, 83 F.3d at 938. White agreed to plead guilty to the one count, give up his right to request records from the government relating to his case, and waive his right to appeal. The government agreed to various point and level reductions, that

6

White would only be responsible for a limited amount of drugs, and to recommend that the court impose a sentence at "the minimum of the applicable guideline range." (DE # 29 at 4.)

Underestimating White's criminal history score does not affect any of these terms. It simply means that they apply in a way less favorable to White. And that is because the agreement itself addressed the possibility of White being ineligible for safety valve treatment— making his receipt of such treatment contingent on his criminal history score being low enough. (*See* DE # 29 at 4 ("*if my criminal history qualifies me for safety valve treatment* . . . then the government will recommend that I am eligible for a two-level reduction") (emphasis added)).

Importantly, his inability to qualify for safety valve treatment did not prevent the government from carrying out its other essential terms of the agreement. Besides the safety valve reduction, the government also promised to agree to a two-point reduction for acceptance of responsibility and another two-level reduction for being a minor participant (DE # 29 at 4), and the presentence report does apply those reductions. It is true that without the safety valve reduction, these reductions have no practical effect on White's potential sentence, but the plea agreement didn't promise that they would. All the government promised is that it would agree to those reductions, and it did so. Furthermore, White's ineligibility for safety valve treatment does not invalidate the rest of the government's promises. Thus, the parties' "mutual

7

mistake" about White's criminal history did not affect the essential parameters of the plea agreement.

In essence, White's motion simply alleges that the parties misjudged where his sentence would come out. But as was made very clear in the colloquy at his plea hearing, White understood that his sentence could be more severe than he anticipated, yet he still wished to plead guilty. (DE # 60 at 11, 19-20); *see Loutos*, 284 F. Supp. 2d at 959 (in rejecting motion to withdraw guilty plea, noting "Loutos's Plea Agreement expressly provides that the court is not bound by the preliminary sentencing calculation contained therein, and Loutos was advised as to that provision during the RULE 11 colloquy"). Further, it is well established that a defendant misjudging where his sentence might come out is not a fair and just reason for allowing him to withdraw his plea. *See Bowlin*, 534 F.3d at 660 ("We have repeatedly held that the fact that a defendant underestimated his sentence when entering his plea is not a fair and just reason to permit him to withdraw that guilty plea.") (internal quotations omitted). The mutual mistake made here does not supply White with a fair and just reason to invalidate his guilty plea.

*B. Unintelligent and Involuntary Plea*

White argues in the alternative that his plea was "not entered knowingly, voluntarily, and intelligently because he was not advised of the consequences of his plea in the event his criminal history did not qualify him for safety valve treatment." (DE # 50 at 5.) A guilty plea operates as a waiver of important rights, and is valid only if

8

done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005) (quoting *Brady*, 397 U.S. at 748). In this case, the record contradicts White's assertion that he was unaware of the consequences of his plea should he fail to qualify for safety valve treatment.

In the plea agreement, White plainly states that: "I understand that the possible penalty that may be imposed upon me for my conviction for the offense charged . . . is a mandatory minimum of 10 years imprisonment." (DE # 29 at 3.) While under oath at his plea hearing, White also affirmatively demonstrated that he knew the mandatory minimum was ten years. (DE # 60 at 9 (responding "Ten years" when asked "What's your understanding of the mandatory minimum term of imprisonment that you're facing for this crime, the lowest point?")). A few minutes after White demonstrated this knowledge of the mandatory minimum term, the following exchange occurred:

Q. You and the Government have also agreed that the Government will make a nonbinding recommendation at sentencing that you, if you qualify, receive the benefit of what's called a safety valve; is that right?

A. Yes, sir.

Q. And if you do receive that, as I understand it, that would take him out of the mandatory minimum ten-year term of imprisonment?

    MS. CONNOR [White's counsel]: That's correct, Your Honor.

Q. And you understand that?

A. Yes, sir.

9

(DE # 60 at 12-13.) And again, these responses were made under oath at his plea hearing. "[V]oluntary responses made by a defendant under oath before an examining judge [are] binding." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). Furthermore, the plea agreement was extremely clear that the safety valve reduction depended on his criminal history score, (*see* DE # 29 at 4), and the court at his hearing referred to this reduction conditionally (DE # 60 at 12 ("if you qualify")). White also told the court that he had reviewed the plea agreement a final time "just before the hearing," and agreed that it was "pretty fresh in [his] mind." (DE # 60 at 8.) Thus, the record demonstrates that White knew that his chances of getting a sentence below the ten-year statutory minimum depended on his eligibility for safety valve treatment.

Certainly, the plea agreement could have specified that the acceptance of responsibility and minor participant reductions would have no practical effect should White be ineligible for safety valve treatment. A simple addition to the end of paragraphs "a" and "d" (*see* DE # 39 at 3), like "I recognize that this reduction will not reduce the statutory mandatory minimum sentence I am subject to unless I also am eligible for safety valve treatment" would have sufficed. Nevertheless, White demonstrated at his plea hearing that he knew the mandatory minimum sentence was ten years, and that the safety valve reduction was the key to circumventing that minimum sentence. The court rejects his argument that White was unaware of the consequences of failing to qualify for safety valve treatment, and thus entered his plea unintelligently and unknowingly.

## III. CONCLUSION

The court has sympathy for White. The sentence he apparently anticipated– one potentially as low as 46 months (*see* DE # 50 at 5)– is now unavailable, replaced by a far longer, mandatory term that this court has no power to reduce. But the record shows that he knew this was a possibility when he entered his plea. White's motion to withdraw his guilty plea (DE # 49) is **DENIED**.

**SO ORDERED.**

**DATED:** February 27, 2009

 s/ James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT